# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| DEANGELO WHITE, | ) |
| | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )         No. 1:16-cv-01276-STA-jay |
| | ) |
| RUSTY WASHBURN, | ) |
| | ) |
| Respondent. | ) |

---

## ORDER DENYING § 2254 PETITION,
## DENYING CERTIFICATE OF APPEALABILITY,
## AND
## DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

Petitioner Deangelo White has filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the following reasons, the Petition is **DENIED**.

## BACKGROUND

In 2012, a Madison County, Tennessee, grand jury charged White with two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, one count of evading arrest, one count of possession of marijuana with intent to sell, and one count of possession of marijuana with intent to deliver. (ECF No. 10-1 at 25-33.) *See also State v. Clark, Curry, and White*, No. W2012-02666-CCA-R3CD, 2014 WL 505501, at *1 (Tenn. Crim. App. Feb. 7, 2014), *perm. to appeal denied* (Tenn. June 20, 2014) ("*White I*"). His co-defendants, Grico Clark and Jordan Curry, were similarly charged, with the exception that they were not indicted on drug offenses. (ECF No. 10-1 at 25-31.) *See also White I*, 2014 WL 505501, at *1. The defendants were tried together. *Id.*

At the jury trial, the victims, Shannell Henning and Leon Jackson, testified that the defendants accosted them around 2:00 a.m. on July 11, 2011, as they were making their way to Henning's apartment in Jackson, Tennessee. *Id.* at *1. "[A]t least two of [the men] were armed," and "[o]ne of the[m] informed Ms. Henning and Mr. Jackson at gunpoint that they were being robbed." *Id.* They "ordered the victims to walk toward their apartment or they would be killed." *Id.* Once inside the apartment, the men "ordered Ms. Henning to sit on the floor" and they took "Mr. Jackson . . . to the kitchen where [they] took his money, and Curry restrained him by duct-taping him to the kitchen chair." *Id.* at *2. When "Curry stated he would kill Ms. Henning," she "felt the need to formulate some type of plan to get out of the apartment to safety." *Id.* She convinced White and Clark that she had more money "down the street in another apartment." *Id.* White and Clark then "took Ms. Henning out of her apartment at gunpoint, escorting her to her car." *Id.* Henning was held at gunpoint during the five minutes it took for her to drive to the other apartment. *Id.* "When they arrived at the apartment, White and Clark gave Ms. Henning five minutes to go inside and return with money or they would 'shoot up' the apartment." *Id.* Once inside, "she immediately called the police." *Id.* "Both White and Clark were eventually apprehended by police after a foot chase." *Id.* "White was found with about twenty-five grams of marijuana in his pocket." *Id.*

During the time that Clark, White, and Henning were en route to the other apartment, Curry "continued to search for money and when he found none, he hit Mr. Jackson in the head." *Id.* After receiving a phone call, he attempted to escape the vicinity but was captured by the police. *Id.* The police found that Curry "was armed with an assault rifle, complete with a clip containing extra rounds," and that he "was wearing latex gloves and had about $550 in cash and Ms.

2

Henning's EBT card in his possession." *Id.* The police found "Jackson . . . duct-taped to a chair inside the apartment." *Id.*

The defendants were convicted of two counts each of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of evading arrest. *Id.* at *3. Curry and Clark were also convicted of one count each of employing a firearm during the commission of a dangerous felony. *Id.* The jury found White "not guilty of the firearm charge" and "convicted [him] of simple possession of marijuana." *Id.*

Curry and Clark each received "a total effective sentence of forty-four years." *Id.* at *1, 11. The court ordered White's sentences for especially aggravated kidnapping to run consecutively, and the sentences for the remaining convictions to run concurrently, for a total effective sentence of forty years. (ECF No. 10-9 at 53.) The direct appeals were consolidated, and the Tennessee Court of Criminal Appeals affirmed the judgments. *White I*, 2014 WL at *11.

White filed a *pro se* post-conviction petition in state court (ECF No. 10-16 at 3-17), which was amended by appointed counsel (*id.* at 18, 31-37). Following an evidentiary hearing, the post-conviction trial court denied relief (*id.* at 44-45), and the TCCA affirmed, *White v. State*, No. W2015-00926-CCA-R3-PC, 2015 WL 9426126, at *1 (Tenn. Crim. App. Dec. 23, 2015), *perm. to appeal denied* (Tenn. Apr. 7, 2016) ("*White II*").

## DISCUSSION

White filed his Petition on October 24, 2016. (ECF No. 1.) He asserts the following claims:

> Claim 1: The evidence was insufficient to convict him of aggravated robbery and aggravated kidnapping. (*Id.* at 6-15.)
>
> Claim 2: The State should have been required to elect offenses. (*Id.* at 16-18.)

Claim 3: The imposition of consecutive sentences violated the Eighth Amendment. (*Id.* at 19-30, 52-54.)

Claim 4: Trial counsel was ineffective in six respects.[1] (*Id.* at 38-46, 52, 54.)

Respondent, Rusty Washburn, filed the state-court record (ECF No. 10) and his Answer (ECF No. 11) to the Petition, and White filed a Reply (ECF No. 26). Respondent argues that Claim 1 and Claim 4A are without merit, Claim 2 and Claims 4B through 4F are procedurally defaulted, and Claim 3 is not well-pled and is procedurally defaulted. (ECF No. 11 at 11-12.) In his Reply, White insists that all claims should be addressed in this federal habeas proceeding and that all have merit. (ECF No. 26.)

## I. Legal Standards

### A. Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable

---

[1] The Court has renumbered the ineffective-assistance claim asserted in Ground 5 (*see* ECF No. 1 at 52, 54) as Claim 4F. The remainder of Ground 5 repeats Claim 3.

application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one

5

complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim when he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs when the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of

actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### B. Insufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc., v. Costa*, 539 U.S. 9, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

7

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

**C. Ineffective Assistance of Counsel**

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690.

8

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II.    Claim 1

Petitioner asserts that the evidence was insufficient to establish that he committed aggravated kidnapping. (ECF No. 1 at 9-15.) He argues, specifically, that the "confinement of the victims was merely incidental to and used only to accomplish the robbery." (*Id.* at 9.) He raised the issue on direct appeal (*see* ECF No. 10-12 at 6, 20-22), but the state appellate court

rejected it, *see White I*, 2014 WL 505501, at *7.  Respondent argues that White is not entitled to relief on his evidence-sufficiency claim because the state court's decision meets the AEDPA's deferential standards.  (ECF No. 11 at 12-17.)  The Court agrees.

"Robbery is the 'intentional or knowing theft of property from the person of another by violence or putting the person in fear.'"  *Id.* at *6 (quoting Tenn. Code Ann. § 39–13–401(a)).  Aggravated robbery occurs "either when the victim is seriously injured or when the defendant 'display[s] ... any article used ... to lead the victim to reasonably believe it to be a deadly weapon.'"  *Id.* (quoting Tenn. Code Ann. § 39–13–402(a)) (alterations in original).

A person commits especially aggravated kidnapping when he "knowing[ly] and unlawful[ly] remov[es] or confine[s] . . . another 'so as to interfere substantially with the other's liberty,'" and does so "with a deadly weapon."  *Id.* (quoting Tenn. Code Ann. §§ 39–13–302, –305).  The element of substantial interference with liberty is met only when "the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony."  *State v. White,* 362 S.W.3d 559, 578 (Tenn. 2012).  The issue is one for the jury, *id.* at 579, which should be instructed to consider "the following factors:

> • the nature and duration of the victim's removal or confinement by the defendant;
>
> • whether the removal or confinement occurred during the commission of the separate offense;
>
> • whether the interference with the victim's liberty was inherent in the nature of the separate offense;
>
> • whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
>
> • whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

• whether the removal or confinement created a significant danger or increased the
    victim's risk of harm independent of that posed by the separate offense.

*Id.* at 580–81.

On direct appeal, the Tennessee Court of Criminal Appeals set forth *Jackson*'s evidence-
sufficiency standards, discussed the proofs required to convict White of aggravated robbery and
especially aggravated kidnapping, and reviewed the evidence. *White I*, 2014 WL 505501, at *3-
7. The court found that "[t]he proof at trial, when taken in a light most favorable to the State,
showed that

> after being approached by the armed men in the parking lot, the victims were taken
> to Ms. Henning's apartment and held at gunpoint for nearly fifteen minutes while
> Clark, White, and Curry ransacked the apartment looking for money. The proof
> further established that Ms. Henning continued to be held against her will, at
> gunpoint, while Clark and White accompanied her to another apartment in hopes
> of stealing more money. As Ms. Henning was taken away, Mr. Jackson was duct-
> taped to a chair in the kitchen of Ms. Henning's apartment and held at gunpoint by
> Curry.

*Id.* at *6. "Throughout the ordeal, both victims were threatened with death if they did not cooperate
with the perpetrators." *Id.*

Based on this record, "and the fact that the trial court properly instructed the jury [on] the
factors set forth in *White*," the court held that "there was ample evidence with which the jury could
determine that the victims were prevented from summoning help on the basis of their restraint by"
the defendants. *Id.* at *7. The court also found that "the restraint of the victims, both by gunpoint
and duct tape, reduced the risk that [the defendants] would be detected and greatly increased the
risk of harm to the victims." *Id.* The court therefore concluded that the jury's ultimate
determination "that the restraint of the victims was not incidental to the kidnapping, but was

actually a separate crime" was "within the province of the jury" and was supported by sufficient evidence. *Id.*

As noted, the Tennessee Court of Criminal Appeals correctly identified *Jackson*'s evidence-sufficiency standards and applied them to the facts of Petitioner's case. White, thus, has not shown that the appellate court's evidence-sufficiency determination is "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Petitioner has also failed to establish that the appellate court's conclusions, and the factual determinations on which they are based, are unreasonable. Firstly, he does not identify any clear and convincing evidence to undermine the court's factual findings as to the types of restraints placed on the victims and the way in which the events unfolded. Secondly, as the appellate court reasonably held, those facts give rise to reasonable inferences that the restraints greatly increased the risk of harm to the victims, prevented them from summoning help, and reduced the risk that the defendants would be detected. The jury was tasked with resolving all competing inferences arising from the evidence, *see White*, 362 S.W.3d at 579, and it did so in the State's favor. Consistent with *Jackson*'s commands, the Tennessee Court of Criminal Appeals gave "full play" to the jury's decision. *Jackson*, 443 U.S. at 319. The state appellate court's determination that the evidence was sufficient to sustain the convictions is, therefore, not an unreasonable application of *Jackson*'s standards. Claim 1 is **DENIED**.

**III.     Claim 2**

12

Petitioner asserts that the prosecution should have been required to elect offenses to prevent "duplicity[,] . . . lack of jury unanimity," and double jeopardy. (ECF No. 1 at 16.) The claim in its entirety must be dismissed.

In his direct appeal, Petitioner argued that the failure of the State to elect offenses resulted in "duplicity and lack of jury unanimity," in violation of state law. (ECF No. 10-12 at 23.) The Tennessee Court of Criminal Appeals rejected the argument, finding that state law did not require an election of offenses in White's case. *White I*, 2014 WL 505501, at *8. Relying on Tennessee Supreme Court case law, the appellate court held "that the State is not required to make an election of offenses when the crime at issue is considered a single, continuous course of conduct." *Id.* (citing *State v. Adams*, 24 S.W.3d 289, 294-95 (Tenn. 2000)). The court found that no election on the kidnapping charges was required because "kidnapping is a continuous course of conduct." *Id.* (citing *State v. Legg*, 9 S.W.3d 111, 118 (Tenn. 1999)). "Moreover, as to the aggravated robbery counts," the court found that the State was not required to make an election of offenses because "[t]he robberies of each victim were clearly distinct acts." *Id.*

Petitioner's argument that the avoidance of "duplicity" required an election of offenses is rejected. In the Sixth Circuit, a federal "indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Gandy*, No. 17-2020, 926 F.3d 248, 2019 WL 2400983, at *9 (6th Cir. June 7, 2019) (quoting *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007)). "[T]he primary concern [with a duplicitous indictment] is that a defendant may be deprived of his right to a unanimous jury verdict." *Id.* (alterations in original) (quoting *Kakos*, 483 F. 3d at 443). The Sixth Circuit's rule against duplicitous pleading in federal cases is not a basis for relief under § 2254 because it is not premised on clearly established United States Supreme

Court law made applicable to the states. White has not cited to a Supreme Court case clearly establishing such a rule, and this Court has not found one. *See Covarrubias v. Gower*, No. 13-CV-04611-EMC, 2016 WL 1569972, at *22 (N.D. Cal. Apr. 19, 2016) ("The U.S. Supreme Court has never held that an indictment is deficient under the federal constitution merely because it contains a duplicitous count.")

Insofar as the election-of-offenses claim is premised on Petitioner's right under the Tennessee constitution to a unanimous jury verdict, it is not cognizable in this federal proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (federal habeas corpus relief is not available "for errors of state law.") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). And, to the extent Petitioner may mean to argue that he has a *federal* right to juror unanimity, he is mistaken. The Supreme Court has repeatedly held that state criminal defendants have no federal constitutional right to a unanimous jury verdict. *See Schad v. Arizona,* 501 U.S. 624, 630–32 (1991) (plurality opinion) (declining to hold that Sixth, Eighth, or Fourteenth Amendments require unanimous jury in state capital cases); *Apodaca v. Oregon,* 406 U.S. 404, 406–14 (1972) (a unanimous jury verdict in state criminal prosecutions is not required by the Sixth and Fourteenth Amendments); *Johnson v. Louisiana,* 406 U.S. 356, 359–63 (1972) (rejecting a due process challenge to non-unanimous state jury verdict). Accordingly, the jury unanimity sub-claim is non-cognizable. *See e.g.*, *Smith v. Sherry*, No. 08-CV-12184, 2011 WL 3440101, at *13 (E.D. Mich. Aug. 8, 2011) (dismissing petitioner's jury unanimity claim as "not cognizable" because "there is no federal constitutional right to a unanimous verdict in a [state] criminal case.") (citing *Apodaca,* 406 U.S. at 406)).

Petitioner's final argument is that the State's failure to elect offenses subjected him to double jeopardy in violation of *Blockburger v. United States*, 284 U.S. 299 (1932). (ECF No. 1 at 16.) Respondent argues that White procedurally defaulted the claim. (ECF No. 11 at 17.)

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The prohibition ... protects individuals not only from successive trials, but also prohibits multiple punishments for the same offense." *United States v. DeCarlo*, 434 F.3d 447, 454 (6th Cir. 2006) (citing *Witte v. United States*, 515 U.S. 389, 391 (1995)). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.

In his direct appeal, Petitioner did not argue, as he does now, that the prosecution's failure to elect offenses violated the Double Jeopardy Clause. (*See* ECF No. 10-12 at 23-24.) Because the time for presenting the issue to the state courts has passed, the claim is procedurally defaulted.

Petitioner asserts that trial counsel "was ineffective in [failing to raise] this issue under *Blockburger*," and that counsel's ineffectiveness is "[c]ause" to excuse the procedural default. (ECF No. 26 at 12.) The argument is without merit. Petitioner litigated the issue of counsel's alleged ineffective assistance as to *Blockburger* in the post-conviction trial court. (*See* ECF No. 10-16 at 35-36; ECF No. 10-17 at 25-26, 30, 38.) He did not, however, exhaust the claim on appeal from the denial of post-conviction relief. *See White II*, 2015 WL 9426126, at *2 ("Petitioner abandons his remaining [ineffective-assistance] claims with regard to double jeopardy, the *Batson* challenge, and severance on appeal."). Accordingly, he cannot now rely on counsel's alleged

15

ineffectiveness as cause to excuse the procedural default of his *Blockburger* claim. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("[G]enerally . . . a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted[.]").

Because Claim 2 in its entirety is not properly before this Court, it is **DISMISSED**.

IV.    **Claim 3**

White asserts in Claim 3 that the imposition of consecutive sentences violated his Eighth Amendment rights. (ECF No. 1 at 19.) Respondent argues that the claim is procedurally defaulted.[2] (ECF No.  at 19.)

Respondent's argument is well-taken, as Petitioner did not advance a federal constitutional challenge to the consecutive sentences in his direct appeal. (*See* ECF No. 10-12 at 25-28 (challenging consecutive sentences on state law grounds only).) Because the federal issue was not fairly presented to the state appellate court, it is procedurally defaulted. *See Baldwin v. Reese*, 541 U.S. 27, 33 (2004) (state habeas petitioner did not "fairly present[]" a federal claim to the state

---

[2]    Respondent also argues that Claim 3 is not well-pled. (ECF No. 11 at 18-19.) He correctly notes that the Petition makes only a cursory mention of the Eighth Amendment, while supporting the claim solely with reference to sentencing requirements under Tennessee cases and statutes. Petitioner does not cure those deficiencies in his Reply. He again mentions the Eighth Amendment, but only cites state law sentencing requirements and does not mention why he believes his consecutive sentences violate any provisions of the United States Constitution. (*See* ECF No. 26 at 13-21.) However, a liberal reading of the Petition suggests that White is complaining that his effective sentence of forty years is "grossly disproportionate" to the offenses for which he was convicted. *Solem v. Helm,* 463 U.S. 277, 288 (1983) ("[T]he Eighth Amendment proscribes grossly disproportionate punishments[.]")

court where nothing in his state-court submission "alerted the court to the alleged federal nature of the claim").

In his Reply, Petitioner asserts cause to excuse the default. (ECF No. 26 at 20-21.) Specifically, he alleges that trial counsel was ineffective in "fail[ing] to adequately investigate and present mitigating evidence during the penalty hearing," and "fail[ing] to explain to [him] that he would be pleading out-of-range." (*Id.*) He further alleges that post-conviction counsel was ineffective in failing to "rais[e] this issue at Post-Conviction hearing and appeal." (*Id.*) The allegations of cause are unavailing, however, because they do not relate to a failure by trial counsel to challenge the sentences on Eighth Amendment grounds. The procedural default is therefore unexcused.[3] Claim 3 is **DISMISSED**.

## V.     Claim 4A

Petitioner asserts that trial counsel was ineffective during plea negotiations and that the decision of the Tennessee Court of Criminal Appeals to deny the claim was unreasonable. (ECF No. 1 at 35-36.) He argues, specifically, that the post-conviction trial court "over-believed . . . counsel['s]" testimony regarding what transpired during the plea stage. (*Id.* at 36.) Respondent argues that the state appellate court's decision easily survives AEDPA review. (ECF No. 11 at 23-26.)

---

[3] Even if an Eighth Amendment claim were properly before the Court, it would be without merit. "The Eighth Amendment does not require strict proportionality between crime and sentence," but "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (quoting *Solem,* 463 U.S. at 288). Accordingly, "outside the context of capital punishment, *successful* challenges to the proportionality of particular sentences will be exceedingly rare." *Solem*, 463 U.S. at 289-90 (emphasis in original) (citations, alterations, and quotation marks omitted). White's consecutive sentences do not represent that rare occasion.

In his amended post-conviction petition, White alleged "that he wanted to accept the [twenty-year] plea offer extended by the State," but "counsel . . . improperly forc[ed] him to proceed to trial instead of accepting the plea[.]" (ECF No. 10-16 at 34.) After hearing Petitioner's testimony on the issue (ECF No. 10-17 at 29-32, 34-36), as well as that of counsel (*id.* at 10-12, 17-2), the post-conviction trial court held that counsel had not provided ineffective assistance in that regard (*id.* at 43-45; ECF No. 10-16 at 44).

Petitioner raised the claim on appeal. *See White II*, 2015 WL 9426126, at *2. The Tennessee Court of Criminal Appeals began its analysis of the issue by identifying *Strickland*'s standards. *See id.* at *2-3. Upon review of the record, the court found that "Petitioner's testimony at the post-conviction hearing . . . was contradictory" to his "complaint [that] trial counsel . . . failed to adequately advise him during the plea negotiations prior to trial." *Id.* at *3. Specifically, Petitioner [f]irst . . . stated that he rejected the [State's] plea offer because he wanted to 'beat' the charge of kidnapping. Then, he claimed that trial counsel 'slick-talked' him into giving up the plea agreement and proceeding to trial." *Id.* At bottom, the appellate court refused to disturb the lower court's finding that White had admitted "that the offers were communicated to him and rejected." *Id.*

The appellate court further held that the record supported the lower court's determination that trial counsel had credibly "testified that he spoke with [Petitioner] and conveyed all offers as well." *Id.* (alteration in original). Specifically, counsel testified that he "remembered one plea offer of twenty years at 100%," and that "[h]e discussed this offer with Petitioner at the jail." *Id.* at *2. "[C]ounsel characterized the offer as 'fair' and described Petitioner as reluctant to accept the plea because 'he didn't believe that the nature of what happened warranted that type of

18

sentence.'" *Id.* Counsel further testified "that Petitioner rejected the plea offer." *Id.* Based on this record, the Tennessee Court of Criminal Appeals concluded that Petitioner did not carry his burden of showing that counsel had rendered ineffective assistance during the plea stage. *Id.* at *4.

The Tennessee Court of Criminal Appeals' decision is not contrary to controlling Supreme Court Law. As discussed, the court identified *Strickland*'s standards and applied them to White's case. *See Williams*, 529 U.S. at 406.

Petitioner has also failed to establish that the appellate court's factual determinations are unreasonable. Firstly, although he disagrees with the post-conviction trial court's decision to credit counsel's testimony, he has not pointed to any clear and convincing evidence to undermine the credibility determination. *See Fargo v. Phillips*, 58 F. App'x 603, 607 (6th Cir. 2003) ("A state court's determination that counsel's testimony was more credible than the witnesses' testimony [is] not unreasonable" when "[t]here is no clear and convincing evidence to justify a rejection of the trial court's credibility finding."). Secondly, he does not identify any clear and convincing evidence contradicting the court's factual finding that he admitted that counsel communicated the plea offer to him, but that he rejected it because he thought he could beat the aggravated kidnapping charges. The record, in fact, supports that finding. (*See* ECF No. 10-17 at 29-32, 34-36.)

Given the state court record, the appellate court's holding that White failed to establish that counsel was ineffective was patently reasonable. Claim 4A is therefore **DENIED**.

## VI.    Claims 4B Through 4F

Petitioner asserts that his trial attorney rendered ineffective assistance by advising him not to testify at trial (Claim 4B) (ECF No. 1 at 38-39), failing to make a challenge under *Batson v.*

19

*Kentucky*, 476 U.S. 79 (1986) (Claim 4C) (*id.* at 41-43), foregoing a challenge to the lesser-included offenses (Claim 4D) (*id.* at 45-46), declining to file a motion to sever his case from that of his co-defendants (Claim 4E) (*id.* at 48-49), and failing to challenge the imposition of partial consecutive sentencing (*id.* at 52). Respondent argues that the claims are procedurally defaulted and Petitioner has not established cause to excuse the defaults. (ECF No. 11 at 20-23.) The Court agrees.

White raised Claims 4B through 4E in the post-conviction trial court. (*See* ECF No. 10-16 at 7, 33-34; ECF No. 10-17 at 12-13, 15, 16, 23, 26, 27-28 42-45.) He did not, however, present the issues on appeal from the denial of post-conviction relief. (*See* ECF No. 10-18 at 6.) *See also White II*, 2015 WL 9426126, at *2.

Petitioner admits that he procedurally defaulted the claims, but he maintains that the ineffective assistance of post-conviction counsel in failing to raise the issues on appeal from the denial of post-conviction relief is cause, pursuant to *Martinez*, to excuse the defaults. (ECF No. 26 at 24.) The argument is unavailing. The "assertion that ineffective assistance of postconviction appellate counsel [can] serve as cause" to excuse the default of an ineffective-assistance-of-trial-counsel claim "is firmly foreclosed by Supreme Court and Sixth Circuit precedent." *Young v. Westbrooks*, 702 F. App'x 255, 268 (6th Cir. 2017) (citing *Coleman*, 501 U.S. at 742-53; *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015)).

Petitioner also procedurally defaulted Claim 4F, which asserts that counsel was ineffective in failing to challenge the consecutive sentences. White insists, however, that post-conviction counsel's failure to raise this claim in the post-conviction trial court is cause to excuse the default. (*See* ECF No. 26 at 25.) The argument is unavailing.

20

Cause may exist to excuse the default of an ineffective-assistance-of-trial-counsel claim if the claim is "substantial" and post-conviction counsel was ineffective for failing to raise it. *Martinez*, 566 U.S. at 14. A claim is substantial if it has "some merit." *Id.* Insofar as Petitioner argues that counsel should have challenged his consecutive sentences under state law (*see* ECF No. 1 at 52-54) Claim 4F is not substantial because it is belied by the record in Petitioner's criminal case. Specifically, trial counsel did, in fact, challenge the consecutive sentences in his motion for new trial (ECF No. 10-3 at 85-86), and during oral argument on the motion (ECF No. 10-11 at 13-16). Appellate counsel then raised the issue on direct appeal, but a split-panel of the Tennessee Court of Criminal Appeals rejected it. *See White I*, 2014 WL 505501, at *8-9. To the extent White cursorily asserts that counsel should have argued that the sentences violated his Eighth Amendment rights (*see* ECF No. 1 at 52), the claim is not substantial because there was no reasonable probability that he would have prevailed on the argument. *See Solem*, 463 U.S. at 289-90 ("[O]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences will be exceedingly rare.") (emphasis in original) (citations, alterations, and quotation marks omitted). Because the procedural defaults are not excused, Claims 4B through 4F are **DISMISSED**.

For the reasons set forth in this order, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates

that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore **DENIED**.[4]

      **IT IS SO ORDERED**.

                                         **s/ S. Thomas Anderson**
                                         S. THOMAS ANDERSON
                                         CHIEF UNITED STATES DISTRICT JUDGE

                                         Date: January 30, 2020.

---

[4] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.